No. 18-3535

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| MICHAEL JOHNSON, | ) | Appeal from the United States |
| | ) | District Court for the Central |
| Plaintiff-Appellant, | ) | District of Illinois |
| | ) | |
| v. | ) | |
| | ) | |
| SUSAN PRENTICE, ANDREA MOSS, | ) | |
| KELLY HAAG, LINDA DUCKWORTH, | ) | |
| DEIDRE MARANO, SCOTT | ) | |
| McCORMICK, RILIWAN OJELADE, | ) | No. 1:16-cv-01244-CSB |
| STEPHEN LANTERNAN, ANDREW | ) | |
| TILDEN, TRAVIS DEVRIES, ERIC | ) | |
| MYERS, GERALD HENKEL, JOHN | ) | |
| GASPER, JAMES BOLAND, WARREN | ) | |
| HADSELL, KIMBERLY KELLY, | ) | |
| TERRI KENNEDY, MICHAEL | ) | |
| MELVIN, and WEXFORD HEALTH | ) | |
| SOURCES, INC., | ) | The Honorable |
| | ) | COLIN S. BRUCE, |
| Defendants-Appellees. | ) | Judge Presiding. |

**BRIEF OF STATE DEFENDANTS-APPELLEES**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

**BENJAMIN F. JACOBSON**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2546
bjacobson@atg.state.il.us

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

Attorneys for State Defendants-
Appellees

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT .................................................................. 1

ISSUES PRESENTED FOR REVIEW .......................................................... 3

STATEMENT OF THE CASE ........................................................................ 4

SUMMARY OF ARGUMENT ...................................................................... 16

ARGUMENT .................................................................................................. 19

I.   Johnson did not raise a general challenge to the use of segregation in the district court. ......................................................................................... 19

II.  This Court reviews *de novo* the district court's grant of summary judgment. ............................................................................................... 20

III. Johnson presented insufficient evidence for a reasonable jury to find in his favor on his Eighth Amendment claim. ......................................... 21

   A.   The four challenged conditions cannot be aggregated because they do not operate together to produce the deprivation of a single, identifiable human need. ........................................................... 22

   B.   Johnson presented insufficient evidence for a reasonable jury to find that the yard restrictions constituted cruel and unusual punishment. ................................................................................ 24

      i.   The undisputed evidence showed that the restrictions on Johnson's access to the yard did not rise to the level of an Eighth Amendment violation. ...................................................... 24

      ii.  State Defendants did not deliberately disregard a known risk to Johnson's health because they relied on medical advice stating that he suffered no harm from lack of exercise. ............................................................................... 33

   C.   If not forfeited, the alleged heat, unsanitary conditions, and excessive noise levels in Johnson's cells did not constitute cruel and unusual punishment. ........................................................... 38

IV.  In the alternative, State Defendants were entitled to qualified immunity. ..... 41

CONCLUSION ............................................................................................... 44

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Agnew v. Nat'l Collegiate Athletic Ass'n,*
  683 F.3d 328 (7th Cir. 2012) .......................................................................... 19, 35

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ............................................................................................ 20

*Antonelli v. Sheehan,*
  81 F.3d 1422 (7th Cir. 1996) ............................................................................. 23

*Budd v. Motley,*
  711 F.3d 840 (7th Cir. 2013) ......................................................................... 23, 34

*Cloe v. City of Indianapolis,*
  712 F.3d 1171 (7th Cir. 2013) ........................................................................... 41

*Collins v. Seeman,*
  462 F.3d 757 (7th Cir. 2006) ............................................................................. 22

*Delaney v. DeTella,*
  256 F.3d 679 (7th Cir. 2001) .............................................................. 25, 28, 29, 30

*District of Columbia v. Wesby,*
  138 S. Ct. 577 (2018) ......................................................................................... 42

*Dixon v. Godinez,*
  114 F.3d 640 (7th Cir. 1997) ......................................................................... 21, 23

*Farmer v. Brennan,*
  511 U.S. 825 (1994) .............................................................. 21, 22, 24, 33

*Figgs v. Dawson,*
  829 F.3d 895 (7th Cir. 2016) ............................................................................. 33

*French v. Owens,*
  777 F.2d 1250 (7th Cir. 1985) ........................................................................... 27

*Gevas v. McLaughlin*,
  798 F.3d 475 (7th Cir. 2015)...................................................................... 35

*Giles v. Godinez*,
  914 F.3d 1040 (7th Cir. 2019)............................................................... passim

*Gray v. Hardy*,
  826 F.3d 1000 (7th Cir. 2016)...................................................................... 23

*Hall v. Flannery*,
  840 F.3d 922 (7th Cir. 2016)........................................................................ 38

*Haywood v. Hathaway*,
  842 F.3d 1026 (7th Cir. 2016)...................................................................... 39

*Helling v. McKinney*,
  509 U.S. 25 (1993) ...................................................................................... 24

*Henderson v. DeRobertis*,
  940 F.2d 1055 (7th Cir. 1991)...................................................................... 39

*Housley v. Dodson*,
  41 F.3d 597 (10th Cir. 1994)........................................................................ 31

*Isby v. Brown*,
  856 F.3d 508 (7th Cir. 2017)........................................................................ 22

*Johnson v. Rimmer*,
  936 F.3d 695 (7th Cir. 2019)........................................................................ 21

*Keenan v. Hall*,
  83 F.3d 1083 (7th Cir. 1996)........................................................................ 23

*Kisela v. Hughes*,
  138 S. Ct. 1148 (2018) ........................................................................... 42, 43

*Lane v. Williams*,
  689 F.3d 879 (7th Cir. 2012)........................................................................ 30

*Lapre v. City of Chi.*,
  911 F.3d 424 (7th Cir. 2018)................................................................... 20, 28

*Lisle v. Welborn*,
  933 F.3d 705 (7th Cir. 2019)........................................................................ 21

*McCann v. Mangialardi,*
    337 F.3d 782 (7th Cir. 2003)................................................................. 41

*Ortiz v. Werner Enters., Inc.,*
    834 F.3d 760 (7th Cir. 2016)................................................................. 41

*Pearson v. Ramos,*
    237 F.3d 881 (7th Cir. 2001)........................................................ passim

*Petties v. Carter,*
    836 F.3d 722 (7th Cir. 2016) ................................................................ 33

*Porter v. Clarke,*
    923 F.3d 348 (4th Cir. 2019).............................................. 19, 20, 31, 32

*Pyles v. Fahim,*
    771 F.3d 403 (7th Cir. 2014)................................................................. 22

*Rhodes v. Chapman,*
    452 U.S. 337 (1981) ............................................................. 21, 22, 24

*Robinson v. Davol, Inc.,*
    913 F.3d 690 (7th Cir. 2019)................................................................. 19

*Rogers v. Scott,*
    695 Fed. Appx. 155 (7th Cir. 2017) ..................................................... 39

*Rosario v. Brawn,*
    670 F.3d 816 (7th Cir. 2012)............................................................ 33, 39

*Russ. Media Grp., LLC v. Cable America, Inc.,*
    598 F.3d 302 (7th Cir. 2010)................................................................. 41

*Sanders v. Sheahan,*
    198 F.3d 626 (7th Cir. 1999)................................................................. 23

*Scarver v. Litscher,*
    434 F.3d 972 (7th Cir. 2006)........................................... 28, 30, 32

*Scheidler v. Ind.,*
    914 F.3d 535 (7th Cir. 2019)........................................................ 29, 38

*Schultze v. White,*
    127 Fed. Appx. 212 (7th Cir. 2005) ..................................................... 41

iv

*Sebesta v. Davis*,
    878 F.3d 226 (7th Cir. 2017)...................................................................... 41

*Sharif v. Internt'l Dev. Grp. Co., Ltd.*,
    399 F.3d 857 (7th Cir. 2005)...................................................................... 19

*Smith v. Dart*,
    803 F.3d 304 (7th Cir. 2015).......................................................... 23, 25, 27

*Taylor v. Brown*,
    787 F.3d 851 (7th Cir. 2015)........................................................................ 2

*Thomas v. Ponder*,
    611 F.3d 1144 (9th Cir. 2010)................................................................... 31

*Thomas v. Ramos*,
    130 F.3d 754 (7th Cir. 1997)..................................................................... 27

*Turley v. Rednour*,
    729 F.3d 645 (7th Cir. 2013)..................................................................... 28

*Walker v. Wexford Health Sources*,
    940 F.3d 954 (7th Cir. 2019).............................................................. 21, 37

*Whiting v. Wexford Health Sources, Inc.*,
    839 F.3d 658 (7th Cir. 2016)..................................................................... 33

*Whitley v. Albers*,
    475 U.S. 312 (1986) .................................................................................. 22

*Williams v. Shah*,
    927 F.3d 476 (7th Cir. 2019)............................................................ 6, 20, 33

*Wilson v. Seiter*,
    501 U.S. 294 (1991) .......................................................................... 23, 24, 25

*Wine & Canvas Dev., LLC v. Muylle*,
    868 F.3d 534 (7th Cir. 2017)..................................................................... 38

**Other Authorities**

U.S. Const., amend. VIII ........................................................................ 21

U.S. Const., amend. XIV ........................................................................ 21

28 U.S.C. § 1291 .................................................................................... 2

28 U.S.C. § 1331 .................................................................................... 1

28 U.S.C. § 2107(a) ............................................................................... 2

42 U.S.C. § 1983 ................................................................................ 1, 5

Fed. R. App. P. 4(a)(1)(A) ..................................................................... 2

Fed. R. App. P. 4(c)(1)(A)(ii) ................................................................. 2

Fed. R. Civ. P. 56 .................................................................................. 2

Fed. R. Civ. P. 56(a) ............................................................................ 20

Fed. R. of Civ. P. 58 .............................................................................. 2

7th Cir. R. 28(b) .................................................................................... 1

20 Ill. Admin. Code § 504.670(a) (2017) ............................................. 36

20 Ill. Admin. Code § 504.670(b) (2017) ............................................. 37

20 Ill. Admin. Code § 504.670(c) (2017) ............................................. 37

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant Michael Johnson's jurisdictional statement is not complete and correct. As required by Circuit Rule 28(b), Susan Prentice, Deidre Marano, Travis Devries, Eric Myers, Gerald Henkel, John Gasper, James Boland, Warren Hadsell, Kimberly Kelly, Terri Kennedy, and Michael Melvin ("State Defendants") provide this statement.

Johnson, who was incarcerated at Pontiac Correctional Center, filed a *pro se* complaint under 42 U.S.C. § 1983 in the district court against State Defendants, as well as Andrea Moss, Kelly Haag, Linda Duckworth, Scott McCormick, Riliwan Ojelade, Stephen Lanternan, Andrew Tilden, and Wexford Health Sources, Inc. ("Wexford Defendants"). Doc. 1 at 1-2.[1] Johnson alleged that all defendants violated his rights under the Eighth Amendment to the United States Constitution by acting with deliberate indifference to the conditions of his confinement and to his serious medical and mental health needs. *See id.*; Doc. 8 at 1-2. Because Johnson's action raised federal questions, the district court had subject matter jurisdiction under 28 U.S.C. § 1331.

On November 15, 2018, the district court dismissed Marano as a party with prejudice and granted summary judgment under Federal Rule of Civil Procedure 56

---

[1] The record on appeal, which is the district court's docket, is cited as "Doc. __ at __." The short record is cited as "S.R. at __." Johnson's opening brief is cited as "AT Br. at __," the three volumes of the separate appendix as "App. __ at __," and his Fed. R. App. P. 28(j) supplemental authority letter as "Sup. Auth. L. at __." The amici curiae brief of former corrections directors and experts is cited as "Corr. AC Br. at __." And the amici curiae brief of the professors and practitioners of psychiatry, psychology, and medicine is cited as "Pysch. AC Br. at __."

to all remaining defendants on both of Johnson's claims, Doc. 109 at 19, thereby disposing of all claims against all parties. The following day, a separate judgment order was entered on the district court's docket pursuant to Federal Rule of Civil Procedure 58. Doc. 110. No motion to alter or amend the judgment was filed.

The "prison mailbox rule," set forth in Federal Rule of Appellate Procedure 4(c)(1), determines when a notice of appeal from an inmate confined in an institution is deemed filed. *See Taylor v. Brown*, 787 F.3d 851, 859 (7th Cir. 2015). The envelope that contained Johnson's notice of appeal is date-stamped November 26, 2018, *see* Doc. 111-1, which satisfies the requirements of the mailbox rule, *see* Fed. R. App. P. 4(c)(1)(A)(ii) (allowing for other "evidence (such as a postmark or date stamp)" to show filing date). Regardless, Johnson's notice of appeal was received and filed by the district court on November 29, 2018, *see* Doc. 111, which was timely because it was within 30 days after judgment was entered on November 16, 2018, *see* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A); Doc. 111-1. This Court has jurisdiction over this appeal from a final judgment under 28 U.S.C. § 1291.

2

## ISSUES PRESENTED FOR REVIEW

1. Whether Johnson cannot amend his complaint on appeal by bringing a general challenge to the use of segregation where he brought a specific conditions-of-confinement claim below.

2. Whether summary judgment was appropriate on Johnson's conditions-of-confinement claim because the yard restrictions were a reasonable response to his violent misconduct, he forfeited any argument relating to the other three challenged conditions by not addressing those conditions in his opening brief, and, in any event, he cannot aggregate the four challenged conditions to establish an Eighth Amendment violation because they relate to different human needs.

3. Alternatively, if not forfeited, whether summary judgment was appropriate on Johnson's conditions-of-confinement claim because State Defendants relied on professional medical judgments that the challenged conditions were not causing his alleged injuries.

4. In the further alternative, whether summary judgment was appropriate on Johnson's conditions-of-confinement claim because State Defendants were entitled to qualified immunity.

## STATEMENT OF THE CASE

### I.    Background

Johnson was housed at Pontiac from March 2013 until he was transferred to another facility in December 2016.  Doc. 76-8 at 6; Doc. 92 at 2; 93-14 at 4-7; Doc. 108 at 2-3.  Upon arriving at Pontiac, Johnson was placed in disciplinary segregation due to misconduct at his prior facility.  *See* Doc. 1 at 7; Doc. 76-8 at 6-8, 11-12, 30-32.  He remained in disciplinary segregation until September 2016, when he was transferred to Pontiac's Mental Health Unit.  *See* Doc. 76-6 at 3-4; Doc. 76-8 at 11-12, 17; Doc. 76-10 at 1-2; Doc. 76-10 at 21-24; Doc. 93-14 at 4-7.  Johnson resided in several different cells for various lengths of time while in segregation.  *See* Doc. 1 at 7, 10; Doc. 76-8 at 6-8, 11-12; Doc. 76-10 at 2-3.

State Defendants held the following positions while Johnson was in segregation at Pontiac.  Melvin was:  (1) Superintendent of the Department until November 2015; (2) Assistant Warden of Programs at Pontiac from November 2015 until May 2016; and (3) Warden of Pontiac from May 2016 onward.  Doc. 92 at 2; Doc. 93-3 at 1.  Gasper was a:  (1) Correctional Officer until December 2014; (2) Sergeant from December 2014 until 2016; and (3) Lieutenant from 2016 onward.  Doc. 92 at 4; Doc. 93-5 at 1.  Boland was a Lieutenant.  Doc. 92 at 3; Doc. 93-4 at 1.  Hadsall and Prentice were Majors.  Doc. 92 at 5-6; Doc. 93-6 at 1; Doc. 93-8 at 1.  Kelley was a Counselor II, and also served temporarily as Acting Assistant Warden of Programs from March to August 2016.  Doc. 92 at 5; Doc. 93-7 at 1.  Kennedy was a Casework Supervisor.  Doc. 92 at 7; Doc. 93-10 at 1.  Devries, Myers, and Henkel

were Correctional Officers.  Doc. 92 at 8-9; Doc. 93-11 at 1; Doc. 93-12 at 1; Doc. 93-13 at 1.

As for the Wexford Defendants, Dr. Tilden was the Medical Director and Ojelade was a physician's assistant.  Doc. 76 at 3; Doc. 76-1 at 1; Doc. 76-7 at 1. Dr. McCormick was a psychiatrist.  Doc. 76 at 3; Doc. 76-3 at 1.  Moss, Lanternan, Haag, and Duckworth were all qualified mental health professionals.  Doc. 76 at 4; Doc. 76-4 at 1; Doc. 76-5 at 1; Doc. 76-6 at 1; Doc. 76-7 at 1.

## II.    Johnson's complaint

Johnson filed a complaint under 42 U.S.C. § 1983, alleging two claims regarding his time in segregation at Pontiac.  *See* Docs. 1, 8.  First, he alleged that the conditions of his confinement constituted cruel and unusual punishment in violation of the Eighth Amendment.  Doc. 1 at 1-2; Doc. 8 at 2.  Specifically, he complained of the following conditions:  (1) regular denial of yard access, including from June 2015 to June 2016; (2) high temperatures during the summer months and the absence of a fan; (3) unsanitary conditions in his cell from poor ventilation, dirty mattresses, and a lack of cleaning materials; and (4) frequent and excessive loud noise from other inmates.  *See* Doc. 1 at 21-25; Doc. 8 at 2.  Second, Johnson alleged that defendants acted with deliberate indifference to his serious medical needs by not addressing the physical and psychological ailments caused by these conditions and by not transferring him to the Mental Health Unit.  *See id*.  He requested leave to file an amended complaint, Doc. 45 at 1, which included various new documents attached as exhibits, *compare* Doc. 1 at 28-49, *with* Doc. 45-2 at 1-76.  The district court rejected

his request because the proposed amended complaint repeated his original allegations and he had indicated an intent to file a second amended complaint. *See* Doc. 65 at 1. Johnson never filed a second amended complaint.

## III.    The summary judgment evidence

The district court granted summary judgment in favor of all defendants on both of Johnson's claims. Doc. 109 at 19. Its decision was based on the following evidence, which is presented in the light most favorable to Johnson. *See Williams v. Shah*, 927 F.3d 476, 479 (7th Cir. 2019).

### A.    Johnson's disciplinary history

Between his incarceration in January 2008 and the end of 2013, Johnson received four disciplinary tickets for fighting, two for intimidation and threats, two for assaulting staff, and nine for destroying parts of his cells. *See* Doc. 93-14 at 1-3. In the first three months of 2013, he received one additional disciplinary ticket for fighting, another for attempting to assault a staff member, one more for intimidation and threats, and two more for damaging his cells. *See id.* at 3-4. This string of violent misconduct led to his transfer to Pontiac for the purpose of placing him in disciplinary segregation. *See* Doc. 76-8 at 30-32.

Once at Pontiac, Johnson's violent misconduct continued:  he assaulted a corrections officer, twice assaulted another inmate, attempted to assault a third inmate, intimidated yet another inmate, and twice damaged Department property. *See* Doc. 76-8 at 9, 30-33, 36; Doc. 92 at 10-12; Doc. 93-14 at 5-7. In addition, he repeatedly disobeyed direct orders, impaired visibility into his cell, kept contraband

in his cell, and was found with another inmate's social security number.  *See* 93-14 at 5-7.

Johnson's mental health providers did not believe that he would benefit from a transfer out of segregation and into the Mental Health Unit.  *See* Doc. 76 9, 14, 19, 25, 27, 29; Doc. 76-3 at 5, 7; Doc. 76-4 at 3, 7; Doc. 76-5 at 5; Doc. 76-6 at 4.  In addition, on several occasions, they recommended and approved his placement in segregation, and restriction from yard access, as punishment for his infractions.  *See* Doc. 76-8 at 41; Doc. 76-11 at 1; Doc. 78-8 at 10**;** Doc. 93-14 at 11-13; Doc. 108 at 4.

### B.    Lack of exercise

As a result of his numerous disciplinary violations while at Pontiac, Johnson was on yard restriction between January 2014 and his transfer to the Mental Health Unit in September 2016.  *See* Doc. 1 at 7, 10; Doc. 92 at 10-12; Doc. 93-14 at 5-7.  Although none of the individual disciplinary yard restrictions exceeded 90 days, due to the number of violations, Johnson was continuously on yard restriction during this time period.  *See id.*  Yard restriction status limited him to one hour of yard time per month.  *See id.*

While Johnson was on yard restriction, Officers Myers, Henkel, and Devries each allegedly denied his monthly yard time on one occasion.  Doc. 1 at 7-10; Doc. 76-8 at 47-55, 60-62; Doc. 92 at 8-10.  Major Prentice allegedly denied it on "numerous occasions[.]"  Doc. 76-9 at 10-12; Doc. 92 at 7.  Although Johnson was not able to recall when any of these denials occurred, *see id.*; Doc. 76-8 at 47-55, 60-62, he claimed that between June 2015 and June 2016 he was not allowed yard access at all,

*see* Doc. 1 at 7-10.  After June 2016, he was again allowed some access to the yard.
*Cf. id.*

According to Johnson, he could exercise in his cells in a restricted manner.  *See*
Doc. 76-9 at 42; Doc. 86 at 6.  The space in his cells was small and cramped, but if his
belongings were not strewn across the floor, there remained enough space to do some
exercise.  *See id.*  Nevertheless, Johnson claimed that he suffered muscle atrophy,
muscle spasms, emotional distress, and worsening mental health issues due to the
lack of yard time.  Doc. 1 at 7-10; Doc. 76-8 at 24-25.

### C.     Excessive heat

Johnson alleged that his cells were very hot in the summer months, with
temperatures between the mid-80s and mid-90s.  Doc. 1 at 17-19; Doc. 76-8 at 23;
Doc. 76-9 at 40-41.  Because the cells had no windows and the doors were either made
of solid metal or Plexiglas-covered bars, there was limited circulation.  *Id.*  The
ventilation systems had limited functionality, which exacerbated the heat.  *Id.*  He
could not afford a fan, and State Defendants denied his requests for a free one.  *Id.*

When temperatures rose, State Defendants placed industrial fans in the
galleries and provided inmates one cup of ice per day.  *Id.*; Doc. 92 at 12.  Johnson
stated that these measures were insufficient to provide anything more than
temporary relief.  Doc. 1 at 17-19; Doc. 76-8 at 23-25; Doc. 76-9 at 40-41.  He claimed
that he suffered emotional distress, fatigue, heart palpitations, inability to focus,
depression, and deteriorating mental health due to the heat.  *Id.*

### D.    Unsanitary conditions

Johnson asserted that his cells were unsanitary due to poor ventilation, the frequent presence of feces, dirty mattresses, and a lack of adequate cleaning materials.  Doc. 1 at 11-13, 19-20; Doc. 76-8 at 40; Doc. 76-9 at 74-77.  According to Johnson, the air blown through the vents was unhealthy because the system had never been cleaned and was full of trash placed there by inmates.  *Id.*  Several of his cells were covered in feces when he entered them, and he smeared feces on the cells and himself several times.  *Id.*; Doc. 92 at 12.  Because of his indigence, however, he could not afford cleaning materials.  *Id.*  State Defendants provided half of a Styrofoam cup of cleaning detergent per week, which Johnson claimed was insufficient to clean the entire cell.  *Id.*  He also alleged that he could not afford towels or pads, requiring him to clean the cells with his hands.  *Id.*  Finally, the mattresses in his cells were always dirty and ripped.  *Id.*  Johnson claimed that these conditions caused him rashes, itching, respiratory issues, breathing difficulties, and burning eyes.  *Id.*; Doc. 76-8 at 24-25.

### E.    Excessive noise

Finally, Johnson claimed that other inmates created excessive noise by yelling; banging on their beds, doors, walls, and floors; and throwing objects.  Doc. 1 at 13-14; Doc. 76-8 at 25-26.  These noises were often overwhelming, and they persisted through the day and night.  *Id.*  Johnson stated that the excessive noise caused him loss of sleep, frayed nerves, difficulties concentrating, and exacerbated his mental illnesses.  *Id.*

### F.     Medical treatment

Wexford doctors and mental health practitioners provided Johnson with treatment throughout his time at Pontiac.  *See generally* Doc. 78 – Doc. 78-11; Doc. 93-15 – Doc. 93-16; *see also* Doc. 92 at 2.  Whenever Johnson complained of muscle pain, weakness, or atrophy, Dr. Tilden and Ojelade recommended painkillers or vitamins.  *See* Doc. 76 at 22; Doc. 78 at 10; Doc. 78-1 at 1; *id.* at 6; Doc. 78-2 at 5; Doc. 78-3 at 5-6 (noting no fatigue or muscle atrophy); Doc. 78-5 at 1; Doc. 93-15 at 31; Doc. 93-16 at 18; Doc. 93-16 at 54-55; 93-16 at 63; *see also* Doc. 76-1 at 2-3 (Dr. Tilden's explanation of medical notes); Doc. 76-2 at 2-4 (same for Ojelade).  In two instances, however, Dr. Tilden and Ojelade noted that any weakness was due to a hunger strike.  *See* Doc. 78-1 at 4; Doc. 78-4 at 1.  Johnson initiated his first hunger strike over unspecified "medical issues," Doc. 93-15 at 15, and the second one because he wanted a transfer to the Mental Health Unit and was unhappy about being disciplined for possessing contraband, *see* Doc. 93-14 at 7; Doc. 93-16 at 40.

Johnson's medical providers also twice noted, in February and May 2016, that he appeared "well-rested and well-nourished."  Doc. 78-8 at 1; Doc. 78-9 at 5.  And Johnson informed the medical providers that he had no complaints or injuries in September 2015, and then again in March, April, June, and September 2016. Doc. 78-2 at 1 (May 2014); Doc. 78-6 at 1 (September 2015); 78-8 at 7 (March 2016); Doc. 78-9 at 2 (April 2016); Doc. 78-9 at 6 (June 2016); Doc. 78-10 at 5 (September 2016).  In January 2016, Ojelade determined that Johnson had no muscle atrophy. Doc. 78-3 at 6.

On June 2, 2016, Ojelade first diagnosed Johnson's muscle issues as related to a lack of exercise. *See* Doc. 57 at 6; Doc. 76-2 at 3-4; Doc. 78-5 at 3. Following this diagnosis, Johnson was again allowed some access to the yard. *Cf.* Doc. 1 at 7-10 (claiming complete denial of yard access ended in June 2016). That access continued even after, one month later, Dr. Tilden concluded that Johnson's muscle complaints were related to dehydration, and prescribed painkillers to address them. *See* Doc. 78-5 at 8; Doc. 93-16 at 63; *see also* Doc. 76-1 at 2-3.

Other than a single instance in July 2014, Johnson's rashes were diagnosed as acne. Doc. 78 at 3 (May 2015); Doc. 78-1 at 9 (February 2014); 78-2 at 8 (July 2014); Doc. 78-4 at 10 (April 2016); Doc. 93-15 at 24 (December 2013), 60 (July 2014), 66 (October 2014); 93-16 at 10 (April 2015), 52 (April 2016); *see also* Doc. 76 at 22. And Johnson's doctor did not record a specific diagnosis regarding the July 2014 instance. *See* Doc. 93-15 at 55-56 (July 2014). When Johnson's medical providers asked him about the suspected source of his rashes, he did not identify the conditions of his cell. *See* Doc. 93-15 at 55, 59. Lamictal, a psychotropic medication that Johnson took between May 2014 and October 2015, has rashes as a potential side effect. Doc. 78-2 at 3, 8; Doc. 93-15 at 64; Doc. 93-16 at 3, 25, 34. At no point did Johnson's medical providers identify any relationship between his cell conditions and his skin issues. *See*, *e.g.*, Doc. 76 at 22.

Johnson's medical providers also never associated his complaints of respiratory issues with his cell conditions. *See* Doc. 78-2 at 10 (upper respiratory infection August 2014); Doc. 93-15 at 57-58 (same in July 2014), 62-63 (same in August 2014);

Doc. 93-16 at 1-2 (same in February 2015), 4-5 (same in March 2015), 14-15 (same in June 2015), 23-24 (same in August 2015), 28-29 (same in October 2015).  Nor did they connect his complaints of itchy eyes, *see* Doc. 93-16 at 1 (February 2015), 4 (March 2015), 14 (June 2015), 23 (August 2015), or headaches, *see id.* at 6 (March 2015), 9 (April 2015), with his cell conditions.  In addition, Johnson indicated that he has seasonal allergies.  *Id.* at 14.

## IV.    Summary judgment

State and Wexford Defendants moved separately for summary judgment.  *See* Doc. 76 at 1; Doc. 92 at 1.  State Defendants argued that Johnson could not establish an Eighth Amendment deliberate indifference claim, which requires showing that he suffered an objectively serious risk of harm and that State Defendants subjectively knew of and disregarded that risk of harm.  Doc. 92 at 2, 13-14.  Beginning with the objective seriousness requirement, State Defendants argued, first, that the yard restrictions were imposed in response to Johnson's numerous instances of violent misconduct, and no individual period of restriction exceeded three months—which, under this Court's precedents, precluded a finding that the conditions of Johnson's confinement were objectively serious.  *Id.* at 14-15.  Second, Johnson presented no evidence, other than his own conjecture, establishing a connection between the complained-of heat, sanitation, or noise issues and his alleged injuries.  *Id.* at 15-16.

Third, the evidence showed nothing more than that Johnson's cell conditions were harsh, which is insufficient to establish a constitutional violation. *Id.* at 15-16.

As for the subjective intent requirement, State Defendants argued that Johnson acknowledged that State Defendants attempted to ameliorate the high temperatures with gallery fans and by distributing ice. *Id.* at 18-19. Further, Johnson acknowledged that they provided him with cleaning supplies. *Id.* Finally, State Defendants argued that Johnson presented no evidence that they were deliberately indifferent to his medical needs. *Id.* State Defendants did not have medical training and were not involved in his medical or mental health treatment. *Id.* Johnson received medical care throughout his time at Pontiac and there was no evidence that State Defendants failed to report a medical issue or denied him access to medical treatment. *Id.*

In response, Johnson submitted an incomplete motion in opposition. *See* Doc. 108 at 17 (stating "I could not finish."). He did not attach any evidence as exhibits in support of his motion. *See generally* Doc. 108.

The district court granted summary judgment for all defendants, finding that no reasonable juror could conclude that the alleged conditions, whether individually or together, constituted an objectively serious risk to Johnson's health and safety. *See* Doc. 109 at 12-15. Regarding the alleged lack of exercise, the court held that each punishment must be looked at individually and that none of the periodic yard restrictions was disproportionate to Johnson's misconduct. *Id.* at 12-13, 15. In addition, Johnson could still exercise, albeit in a more limited manner, inside his cell.

*Id.* at 15.  And, the court held, none of the evidence presented connected his alleged ailments to a lack of exercise.  *Id.*

As for Johnson's allegations pertaining to excessive heat, the district court held that Johnson identified only one cell with heat problems and that his stay in that cell was very short.  *Id.* at 13-14.  Moreover, State Defendants acted to ameliorate the heat with gallery fans and ice.  *Id.* at 14.  The court also held that Johnson failed to establish that the presence of feces in his cell was sufficiently serious to satisfy the requirement of objective seriousness because he did not specify how long his cell was in this condition.  *Id.*  Johnson also failed to identify which defendants were responsible for the alleged condition.  *Id.*  And, the court reasoned, Johnson could not have been exposed to feces for long because the only instance he identified occurred while he was receiving well-being checks every 10 minutes and he was moved to a different cell shortly after he refused orders to clean up the feces, which were his own.  *Id.*

The district court also granted summary judgment to State Defendants on Johnson's claim alleging deliberate indifference to his medical needs, holding that he presented no evidence that they impeded his access to treatment.  *Id.* at 19.  State Defendants were also allowed, as they did, to defer to the professional judgments of Johnson's medical providers.  *Id.*

Johnson appealed.  Doc. 111.  On appeal, he abandoned his deliberate indifference to medical needs claim against State Defendants.  AT Br. at 18 n.12. Thus, the only claim that Johnson is pursuing before this Court as to State

14

Defendants is his conditions-of-confinement claim asserting that State Defendants violated the Eighth Amendment by denying him yard access, and exposing him to high temperatures in the summer months, unsanitary cell conductions, and excessive noise from other inmates.

## SUMMARY OF ARGUMENT

As an initial matter, Johnson cannot reframe his claim on appeal by bringing a general challenge to his placement in segregation.  His complaint and arguments below challenged four specific conditions of his confinement:  (1) denial of yard access; (2) high cell temperatures; (3) unsanitary conditions; and (4) loud noises.  Johnson therefore forfeited any challenge to his placement in segregation, in and of itself.  The arguments on that issue in his brief and that of amici curiae are beside the point.

In addition, Johnson cannot aggregate the four challenged conditions to establish objective seriousness, because that is allowed only where the challenged conditions work together to deprive an inmate of a single human need.  Although Johnson's allegations about poor ventilation, dirty mattresses, unclean cells, and lack of cleaning materials arguably could be aggregated to determine whether they violated Johnson's need for sanitary housing, the remaining conditions cannot, because they are associated with other human needs:  the yard restrictions with the need for exercise; the heat with the need for adequate shelter; and the noise with the need for sleep.  Indeed, if Johnson were correct that the four challenged conditions should be aggregated for purposes of determining whether he suffered a deprivation of his need for "physical and psychological health," then any cell conditions could be aggregated together, a result foreclosed by Eighth Amendment jurisprudence.

Summary judgment was appropriate on Johnson's challenge to those four conditions of confinement because he presented insufficient evidence for a reasonable

jury to find in his favor on either the objective or subjective element of an Eighth Amendment claim.  Objectively, State Defendants' restrictions on Johnson's yard access did not rise to the level of a constitutional violation because:  (1) restrictions under 90 days generally do not violate the Constitution; (2) the restrictions were imposed due to Johnson's repeated, violent misconduct; (3) even if prison officials could reasonably anticipate that restrictions on out-of-cell exercise might result in harm to an inmate, it does not violate the Constitution to impose such restrictions as a legitimate response to the security threat the inmate presents; and (4) Johnson could still exercise inside his cell.  Moreover, even if the restrictions were objectively serious, State Defendants did not act with subjective disregard for Johnson's health because they relied on the professional judgment of his medical providers that his alleged injuries were not caused or exacerbated by a lack of exercise.

Johnson forfeited any argument about the objective seriousness of the temperature, sanitation, and noise issues by not addressing these issues in his opening brief.  He also failed to cite to the record in support of or develop an argument that State Defendants were subjectively aware of any risk from these alleged conditions, which makes any claim regarding these three conditions doubly forfeited.  Regardless, State Defendants lacked subjective disregard for any risk to Johnson's health associated with these three conditions, because they relied on the professional judgment of Johnson's medical providers that the conditions did not cause or exacerbate his medical complaints.  State Defendants also attempted to

ameliorate the summertime temperatures by placing fans on the galleries and providing ice.

Finally, even if Johnson could establish a violation of his constitutional rights (and he cannot), State Defendants were entitled to qualified immunity because no precedent at the time clearly established that State Defendants' conduct violated the Eighth Amendment.  Rather, precedent authorized prison officials to restrict an inmate's access to outdoor exercise in response to his violent misconduct.  Precedent also established that prison officials who rely on medical professionals' judgment that an inmate's injuries were not caused by his conditions of confinement lacked subjective awareness of a risk to the inmate's health.

## ARGUMENT

**I.  Johnson did not raise a general challenge to the use of segregation in the district court.**

Johnson did not allege in his complaint or argue in response to the summary judgment motions that disciplinary segregation, in and of itself, violates the Eighth Amendment. *See* Doc. 1 at 21-25 (complaint); Doc. 108 (response to summary judgment). To the extent that Johnson attempts on appeal to expand his conditions-of-confinement claim to include a general challenge to his placement in segregation, *see*, *e.g.*, AT Br. at 25 (defendants "deprived him of . . . basic human needs" by placing him in "solitary confinement"); *id.* at 25-29, 45-48 (discussing literature about solitary confinement); *id.* at 32-34 (discussing case law on solitary confinement), he forfeited any such claim by not raising it below, *see Robinson v. Davol, Inc.*, 913 F.3d 690, 696 (7th Cir. 2019) ("failure to present a specific argument below results in" forfeiture); *Sharif v. Internt'l Dev. Grp. Co., Ltd.*, 399 F.3d 857, 863 (7th Cir. 2005) (same for claim not raised in complaint). Johnson did not request leave to amend his complaint to include such a claim, and he cannot accomplish that now on appeal. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("It is a basic principle that the complaint may not be amended . . . by the briefs on appeal.") (internal quotations omitted).

Johnson's supplemental citation to the Fourth Circuit's decision in *Porter v. Clarke*, *see* Sup. Auth. L. at 1 (citing 923 F.3d 348, 368 (4th Cir. 2019)), and the briefs of amici curiae, *see generally* Corr. AC Br.; Pysch. AC Br., are irrelevant to the claim and arguments that Johnson pressed in the district court. In *Porter*, the court

considered the impacts that solitary confinement had on "the basic human need for meaningful social and positive environmental stimulation." 923 F.3d at 368. And the briefs of amici curiae similarly focus on the harms from solitary confinement in and of itself. *See generally* Corr. AC Br.; Pysch. AC Br. But, again, that is not what Johnson argued or claimed in the district court. *See* Doc. 1 at 21-25. Rather, he focused on four specific conditions during his time in segregation at Pontiac: (1) denial of yard access; (2) high temperatures; (3) unsanitary conditions; and (4) loud noise. *See id.*; *see also infra* §§ III.B.i. (distinguishing *Porter* when addressing the conditions-of-confinement claim Johnson pled in his complaint and pressed in the district court). The district court correctly granted summary judgment regarding those alleged conditions, as now explained.

## II. This Court reviews *de novo* the district court's grant of summary judgment.

This court reviews *de novo* a district court's order granting summary judgment. *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). On *de novo* review, the district court's judgment may be affirmed on any basis supported by the record and law. *Lapre v. City of Chi.*, 911 F.3d 424, 430 (7th Cir. 2018).

Summary judgment is appropriate when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). At this stage of the case, this Court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *Williams v. Shah*, 927 F.3d 476, 479 (7th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine issue of material fact exists when the evidence allows a

20

reasonable jury to decide in favor of the nonmoving party. *Walker v. Wexford Health Sources*, 940 F.3d 954, 963 (7th Cir. 2019). Conclusory allegations, however, are not evidence. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). And inferences supported by nothing more than speculation or conjecture cannot overcome summary judgment. *Johnson v. Rimmer*, 936 F.3d 695, 706 (7th Cir. 2019).

## III.     Johnson presented insufficient evidence for a reasonable jury to find in his favor on his Eighth Amendment claim.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII; *see also Giles*, 914 F.3d at 1048 (Eighth Amendment is applicable to the States through the Fourteenth Amendment). Although prisons need not be comfortable, the wanton and unnecessary infliction of pain and suffering—imposing pain devoid of penological purpose—constitutes cruel and unusual punishment. *Lisle*, 933 F.3d at 716 (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). A correctional officer violates the Eighth Amendment when he causes wanton and unnecessary pain and suffering by acting with deliberate indifference to an inmate's conditions of confinement. *Giles*, 914 F.3d at 1049 (citing *Rhodes*, 452 U.S. at 347).

But an inmate's conditions of confinement may be harsh without violating the Constitution. *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994)). The Eighth Amendment is violated "only when two requirements are met." *Farmer*, 511 U.S. at 834. First, the plaintiff must establish, as an objective matter, "that the conditions are sufficiently serious" "that they deny the inmate 'the minimal civilized measure of life's necessities[.]'" *Isby v.*

21

*Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (quoting *Rhodes*, 452 U.S. at 347) (internal

citation omitted).  Second the inmate must make "a subjective showing of a

defendant's culpable state of mind[,]" *id.* (citing *Farmer*, 511 U.S. at 834), which is a

"deliberate indifference to the inmate's health or safety[,]" *Giles*, 914 F.3d at 1051.

The inmate bears the burden of establishing an Eighth Amendment violation, "and

that burden is a heavy one."  *Pyles v. Fahim*, 771 F.3d 403, 408-09 (7th Cir. 2014)

(citing *Whitley v. Albers*, 475 U.S. 312, 325 (1986)); *see also Collins v. Seeman*, 462

F.3d 757, 762 (7th Cir. 2006) (deliberate indifference is a "high hurdle") (internal

quotations omitted).  Johnson failed to carry this heavy burden on either element of

his conditions-of-confinement claim against State Defendants.

### A.    The four challenged conditions cannot be aggregated because they do not operate together to produce the deprivation of a single, identifiable human need.

Johnson argues that the four challenged conditions should be viewed together

as depriving him of "physical and psychological health."  *See* AT Br. at 41; *see also id.*

at 39-40 (arguing lack of exercise combined with heat, unsanitary conditions, and

noise violated Eighth Amendment).  That is not how the objective element of the

deliberate indifference standard is analyzed.

Various conditions can be combined to establish a violation of the Eighth

Amendment, but only "when the conditions 'have a mutually enforcing effect that

produces the deprivation of a single, identifiable human need such as food, warmth,

or exercise.'"  *Giles*, 914 F.3d at 1052 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304

(1991)).  Each of these distinct human needs, in turn, contributes to one's physical and psychological health.  *See id.*

Thus, the poor ventilation, dirty mattress, uncleanliness, and lack of cleaning materials alleged by Johnson can be aggregated to determine if they violated Johnson's need for sanitary housing.  *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016); *Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013).  But the yard restrictions and allegedly excessive heat and noise cannot be aggregated because they are associated, respectively, with Johnson's distinct needs for exercise, adequate shelter, and sleep.  *See Wilson*, 501 U.S. at 304 (denial of yard access can deny need for exercise); *Dixon*, 114 F.3d at 643-44 (extreme temperatures can deny need for adequate shelter); *Sanders v. Sheahan*, 198 F.3d 626, 628 (7th Cir. 1999) (excessive noise can deny need for sleep).

Johnson's attempt to broaden the relevant human need to encompass his "physical and psychological health," *see* AT Br. at 41, is inconsistent with Eighth Amendment jurisprudence, *see*, *e.g.*, *Smith v. Dart*, 803 F.3d 304, 312 n.4 (7th Cir. 2015) (explaining that need for temperate housing is distinct from needs for adequate food, sanitary housing, exercise, and potable water); *Sanders*, 198 F.3d at 628-29 (addressing inmates' various conditions claims separately); *Keenan v. Hall*, 83 F.3d 1083, 1089-92 (7th Cir. 1996) (same); *Antonelli v. Sheehan*, 81 F.3d 1422, 1431-33 (7th Cir. 1996) (same).  Indeed, if one's "physical and psychological health" were a single human need, as Johnson argues, then every challenged condition of confinement could be aggregated:  for example, a lack of food, clothing, shelter,

23

medical care, sanitation, or safety *all* can harm an inmate's physical and mental

health. *Cf.*, *e.g.*, *Farmer*, 511 U.S. at 832 (noting human needs for "food, clothing,

shelter, and medical care"); *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (identifying

additional human need for "reasonable safety") (internal quotations omitted);

*Rhodes*, 452 U.S. at 348 (same for sanitation). But, as the Supreme Court explained

in *Wilson v. Seiter*, "[n]othing so amorphous as 'overall conditions' can rise to the

level of cruel and unusual punishment when no specific deprivation of a single

human need exists." 501 U.S. at 305. Thus, because the four conditions are not

associated with the same human need, this Court should not consider them all

together.

### B.     Johnson presented insufficient evidence for a reasonable jury to find that the yard restrictions constituted cruel and unusual punishment.

#### i.     The undisputed evidence showed that the restrictions on Johnson's access to the yard did not rise to the level of an Eighth Amendment violation.

The series of restrictions on yard access implemented by State Defendants in

response to Johnson's own conduct did not rise to the level of an Eighth Amendment

violation. First, none of the individual periods of restricted yard access exceeded 90

days, which this Court has identified as the usual threshold for holding that a yard

access restriction is sufficiently serious to implicate the Eighth Amendment. Second,

Johnson could still exercise, albeit in a limited manner, within his cell. Finally, each

of the yard restrictions was imposed for the legitimate penological purpose of

protecting prison staff and other inmates from Johnson's violent misconduct. Even if

a yard restriction could be reasonably anticipated to cause physical or psychological

harm, there is no Eighth Amendment violation where the restriction is a reasonable

response to the security threat an inmate poses.

Exercise is a basic human need and its long-term denial may constitute cruel

and unusual punishment. *See*, *e.g.*, *Wilson*, 501 U.S. at 304. But "short term denials

of exercise may be inevitable in the prison context and are not so detrimental as to

constitute a constitutional violation." *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th

Cir. 2001). Thus, in most instances, denial of yard access for up to 90 days does not

violate the Eighth Amendment. *Pearson v. Ramos*, 237 F.3d 881, 884-85 (7th Cir.

2001). It is only when the denial was for an "extreme and prolonged" period of time,

or resulted in muscle atrophy or other physical harm, that the Eighth Amendment

might be implicated. *Smith*, 803 F.3d at 313 (internal quotations omitted). In

addition, yard restrictions imposed because of prison rule violations should be

considered individually, not "stacked" and considered as one cumulative restriction.

*Pearson*, 237 F.3d at 886.

*Pearson* is instructive. There, the plaintiff assaulted a guard, sending him to

the hospital; set fire to his cell, causing an evacuation; assaulted another guard, then

spat on a third; and threw a broom and bodily fluids at a staff member. 237 F.3d at

885. He received a 90-day denial of yard access for each of these four incidents,

resulting cumulatively in a year without yard access. *Id.* at 883. He contended that

this one-year denial of access to the yard was an objectively serious risk to his need

for exercise. *See id.* at 885. This Court disagreed, holding that "it is wrong to treat

stacked sanctions as a single sanction." *Id.* at 886. Rather, each "disciplinary

25

sanction, like every sentence, must be treated separately, not cumulatively, for purposes of determining whether it is cruel and unusual." *Id.* And, as a general rule the "denial of yard privileges for no more than 90 days at a stretch is not cruel and unusual punishment"—so long as it is not imposed "for some utterly trivial" disciplinary infraction. *Id.* at 884-85. Applying this general rule to the facts before it, the Court held that the punishments were not excessive because the plaintiff's violent misconduct was "not trivial[.]" *Id.* at 885. And looking at the year-long denial as a whole, the Court concluded that "[p]reventing access to the yard was a reasonable method of protecting the staff and the other prisoners from his violent propensities." *Id.*

As in *Pearson*, none of the individual yard restrictions Johnson received exceeded 90 days. *See* Doc. 93-14 at 5-7. Like the *Pearson* plaintiff, Johnson repeatedly engaged in acts of violent misconduct: while at Pontiac alone, he assaulted a corrections officer, twice assaulted another inmate, attempted to assault a third inmate, intimidated yet another inmate, twice damaged Department property, and repeatedly disobeyed direct orders. *See* Doc. 93-14 at 5-7. These are not the "utterly trivial infraction[s] of the prison's disciplinary rules" that this Court indicated could demonstrate disproportionality. *See Pearson*, 237 F.3d at 884-85. Johnson's long history of violence while in Department custody prior to Pontiac— which included fighting with other inmates, intimidation and threats, assaulting staff and inmates, and destroying parts of his cell—further supports the reasonableness of these punishments. *See* Doc. 76-8 at 9, 30-33; Doc. 93-14 at 1-5. Although Johnson's

26

behavior was not identical to that in *Pearson*, his many acts of misconduct showed that he "[w]as violent and incorrigible[,]" thus justifying 90-day restrictions on yard access for each infraction. *Pearson*, 237 F.3d at 885. And, as in *Pearson*, that his punishments combined together resulted in him being denied yard access for one year does not change this outcome. *See id.* (holding that "the denial of yard privileges for a year does [not] do so much harm to a prisoner that it is intolerable to the sensibilities of a civilized society").

Moreover, Johnson was able to exercise, albeit in a more restricted manner, within his cell. *See* Doc. 76-9 at 42 (acknowledging ability to exercise in cell, even if more difficult with belongings on floor); Doc. 86 at 6 (same). So he was not completely deprived of exercise for any period of time. *See Smith*, 803 F.3d at 313 (affirming dismissal of claim because plaintiff did "not allege that his movements are restricted to the point that he is unable to exercise inside his cell"); *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (affirming summary judgment for defendants where inmate could still "engage in exercise in his cell such as push-ups, sit-ups, jogging in place, and step-ups"); *French v. Owens*, 777 F.2d 1250, 1256 (7th Cir. 1985) (being forced "to exercise in cramped quarters" does not rise to level of constitutional violation).

Finally, even if correctional officers are aware that denying a prisoner the opportunity to exercise may cause physical or psychological harm, that denial will not violate the Eighth Amendment if it is proportionate to a legitimate penological purpose, which includes protecting other inmates and staff from the prisoner's

27

violent propensities. *See Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013)

(explaining "that the norm of proportionality" guides this analysis); *Scarver v.*

*Litscher*, 434 F.3d 972, 976 (7th Cir. 2006) ("Measures reasonably taken to protect

[other] inmates and staff from [a prisoner] may unavoidably aggravate [that

prisoner's] psychosis" without violating the Constitution.); *Delaney*, 256 F.3d at 683-

84 (noting "legitimate penological reasons" can justify "an extended denial of

exercise privileges"). Thus, even if the yard restrictions exacerbated Johnson's

mental health issues or caused muscle spasms (and, as explained in Part III.B.ii,

there is no evidence that Johnson's medical providers concluded that they did), the

restrictions do not qualify as objectively serious because they were reasonably

imposed to protect other inmates and staff from Johnson's violent outbursts. *See*

Doc. 93-14 at 5-7.

On appeal, Johnson maintains that State Defendants did not argue below that

Johnson presented a security threat, thereby forfeiting that argument on appeal. AT

Br. at 36. Not so. In their summary judgment motion, State Defendants argued that

the yard restrictions "were appropriately imposed on [Johnson] due to his substantial

number of disciplinary violations[.]" Doc. 92 at 15. And, in any event, this Court

may affirm the district court's judgment on any basis supported by the record.

*Lapre*, 911 F.3d at 430.

On the merits, Johnson contends that "ameliorating access to regular out-of-

cell recreation is obligatory, at least in the absence of an extraordinary security risk."

AT Br. at 34. And he argues that the district court should not have relied on

Johnson's rule violations to support summary judgment, because his "constellation of misconduct" did not present the extreme security risk necessary to justify "a four-year 24/7 solitary confinement stint." *See id.* at 36-37 (citing *Delaney*, 256 F.3d at 687). These arguments miss their mark.

First, Johnson impermissibly combines all of the yard restrictions into a single deprivation, when each must be considered as a response to a discrete disciplinary infraction, as explained above. *See Pearson*, 237 F.3d at 886 ("Every disciplinary sanction, like every sentence, must be treated separately, not cumulatively, for purposes of determining whether it is cruel and unusual."). He does not address this requirement or explain why it should not apply to him, *see* AT Br. at 36-39, and so forfeited arguments on this point, *Scheidler v. Ind.*, 914 F.3d 535, 540 (7th Cir. 2019) ("A party . . . generally forfeits issues and arguments it fails to raise in its initial appellate brief."). Forfeiture aside, as also explained above, *Pearson* confirms that each 90-day restriction was a legitimate penological response to Johnson's acts of violent misconduct.

Second, Johnson's citation to *Delaney* for the proposition that he "did not pose a sufficiently serious security threat[]" to justify the denial of "'*all* opportunity for exercise outside his cell'" is misplaced. AT Br. at 37 (quoting *Delaney*, 256 F.3d at 687). Johnson was not denied *all* opportunity for out-of-cell exercise while at Pontiac. Rather, as a result of his own misconduct, he lost those privileges for one year. *See* Doc. 1 at 7. And *Delaney* is further distinguishable. In that case, the yard restrictions were not imposed in response to the plaintiff's misconduct; indeed, there

was no finding that the plaintiff had committed any acts of misconduct. *Delaney*, 256 F.3d at 684. Here, as in *Pearson*, Johnson's yard privileges were restricted in response to his long list of violent disciplinary infractions. *See* Doc. 76-8 at 9, 30-33; Doc. 93-14 at 5-6. Thus, while the defense characterization of the plaintiff in *Delaney* as a "security threat" may have been "conclusory" and "unsupported," 256 F.3d at 684, the same is not true of Johnson; here, specific evidence of violent misconduct supports each of the disciplinary restrictions imposed, *see* Doc. 93-14 at 5-6.

Next, Johnson attempts to distinguish *Pearson* by arguing that his mental illness exacerbated the effects of the restrictions. AT Br. at 38. But, as discussed, "[m]easures reasonably taken to protect [other] inmates and staff from [a prisoner] may unavoidably aggravate [that prisoner's] psychosis" without violating the Constitution. *Scarver*, 434 F.3d at 976. Relatedly, Johnson maintains that: (1) transferring him the Mental Health Unit would have been "a viable alternative to 24/7 solitary confinement"; (2) his yard access denial was "nearly 400% longer" than in *Pearson*, and (3) defendants provided no explanation for the lack of alternative exercise arrangements. AT Br. at 38-39. However, it was not up to Johnson to decide what would have been "viable" for purposes of determining the terms of his treatment or incarceration. *See Lane v. Williams*, 689 F.3d 879, 882 (7th Cir. 2012) (stating that what treatment an inmate receives "must be decided by mental-health professionals") (internal quotations omitted). In addition, State Defendants did not have the authority to unilaterally transfer Johnson to the Mental Health Unit. *See* Doc. 76 at 29; Doc. 76-3 at 7-8; Doc. 76-4 at 7; Doc. 92 at 3-10. That decision was up

to his medical providers, who consistently assessed, until August 2016, that the move would not be beneficial for him.  *See id.*

And, as discussed, Johnson was not completely deprived of out-of-cell exercise while at Pontiac—only for the last year he was in segregation, *see* Doc. 1 at 7, which this Court stated "is not intolerable to the sensibilities of a civilized society," *Pearson*, 237 F.3d at 885.  In those cases where courts have noted that alternative exercise options should have been provided, *see* AT Br. at 39 (citing cases for that proposition), the inmate did not pose any security risk, unlike Johnson, *see Thomas v. Ponder*, 611 F.3d 1144, 1154-55 (9th Cir. 2010) (yard restriction imposed for refusal to sign form, noting extreme security risks can justify denial of yard access); *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994) (restricting inmate who presented major security risk to one hour of exercise per week did not violate the Constitution).

Finally, Johnson's supplemental reliance on *Porter* is, again, misplaced.  *See* Sup. Auth. L. at 1-2.  The finding of an Eighth Amendment violation there rested on the fact that the conditions at issue were imposed on all death-row inmates, not only those who had engaged in misconduct while incarcerated.  923 F.3d at 358-59.  This meant that the inmates there were "not provide[d] . . . with an avenue for removing themselves from segregation."  *Id.*  Johnson could have ended his segregation and yard restrictions by complying with Department rules.  In fact, the Fourth Circuit in *Porter* acknowledged "that a legitimate penological justification can support prolonged detention of an inmate in segregated or solitary confinement, . . . even

31

though such conditions create an objective risk of serious emotional and psychological harm." *Id.* at 362-63; *see also Scarver*, 434 F.3d at 976 (same). The same reasoning applies here: the restrictions on Johnson's access to the yard were imposed as a result of his own, repeated acts of violent misconduct. *See* Doc. 76-8 at 9, 30-33; Doc. 93-14 at 5-6. And, unlike the defendants in *Porter*, 923 F.3d at 363-64, State Defendants did not forfeit this argument, *see* Doc. 92 at 15 (arguing that the yard restrictions "were appropriately imposed on [Johnson] due to his substantial number of disciplinary violations").

The Fourth Circuit also relied on studies the plaintiffs had presented to demonstrate the potential physical and psychological effects associated with solitary confinement. 923 F.3d at 358-59. But unlike the plaintiffs in *Porter*, Johnson failed to produce evidence at summary judgment that would allow a court to find that his segregation posed a serious risk of psychological and emotional harm. *See id.* at 359. The studies Johnson cites on appeal were not before the district court, *see generally* Docs. 1, 45 – 45-2, 52 – 59, 86 – 88, 108, depriving the court and State Defendants the opportunity to consider or rebut them, and, in any event, do not address harms caused by lack of exercise. Thus, rather than bolstering Johnson's position, *Porter* supports affirming the district court's grant of summary judgment to State Defendants.

### ii.     State Defendants did not deliberately disregard a known risk to Johnson's health because they relied on medical advice stating that he suffered no harm from lack of exercise.

Even if Johnson had established that the yard restrictions satisfied the objective portion of the Eighth Amendment inquiry, the undisputed evidence showed that State Defendants were not deliberately indifferent to his health or safety.  A prison officer is deliberately indifferent where she "'knows of and disregards an excessive risk to inmate health or safety.'"  *Williams*, 927 F.3d at 480 (quoting *Farmer*, 511 U.S. at 837).  This is a subjective standard, which requires evidence showing both that the prison officer knew "of facts from which he could infer that a substantial risk of serious harm exists, and" that he drew that inference.  *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (citing *Farmer*, 511 U.S. at 837).  While it is not necessary for the inmate to show that the correctional officer specifically intended the harm or even believed the harm would occur, more than negligence or even recklessness is required.  *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Instead, the inmate "must show that the defendant was essentially criminally reckless, that is, ignored a known risk."  *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016).  Even gross negligence is insufficient; the defendant's conduct must approach complete disregard for the inmate's welfare.  *Rosario v. Brawn*, 670 F.3d 816, 821-22 (7th Cir. 2012).  Thus, "[p]rison officials who actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 822 (internal quotations

33

omitted).  Similarly, there is no deliberate indifference where prison officers relied on the judgment of medical professionals who determined that the challenged condition had no adverse effect on the inmate's mental or physical health.  *See Giles*, 914 F.3d at 1052.

These principles require affirmance of the decision below.  Until June 2016, Johnson's doctors did not identify any harm or risk from lack of exercise despite frequently examining his physical condition.  *See* Doc. 78 at 10 ("lower extremity pain" for undisclosed reasons); Doc. 78-1 at 1 (pubic pain due to being kicked); *id.* at 4 (weakness due to hunger strike and lack of fluids); *id.* at 6 (prescribing multivitamin for low weight); Doc. 78-2 at 5 (unspecified injuries); Doc. 78-3 at 5-6 (noting no fatigue or muscle atrophy); Doc. 78-4 at 1 (weakness due to hunger strike); Doc. 78-5 at 1 (hand pain due to struggle with correctional officer); Doc. 93-15 at 31 (pain due to exercise injury); Doc. 93-16 at 18 (unspecified arm pain); Doc. 93-16 at 54-55 (upper body pain).  Because State Defendants relied on these professional medical judgments, they did not have the requisite culpable mental state to violate the Eighth Amendment.  *See Giles*, 914 F.3d at 1052 (no deliberate indifference where prison officials relied on the professional judgment of medical practitioners); *cf. Budd*, 711 F.3d at 843 (finding inmate stated Eighth Amendment claim where doctors concluded that the unsanitary conditions caused his injury).

In fact, Johnson periodically told doctors and staff that he had no complaints or injuries.  *See* Doc. 78-2 at 1 (May 2014); Doc. 78-6 at 1 (September 2015); 78-8 at 7 (March 2016); Doc. 78-9 at 2 (April 2016); Doc. 78-9 at 6 (June 2016); Doc. 78-10 at 5

(September 2016); *see also* Doc. 78-8 at 1 (doctor noting Johnson "appears well-rested and well-nourished" in February 2016); Doc. 78-9 at 5 (same in May 2016). These statements likewise undermine any inference of subjective awareness by State Defendants. *Cf. Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015) ("[C]omplaints that are contradicted by the prisoner himself [will not] suffice to establish knowledge."). Indeed, the only time Johnson's medical providers connected any health issue with lack of exercise was on June 2, 2016, Doc. 57 at 6; Doc. 76-2 at 3-4; Doc. 78-5 at 3, after which he was allowed outdoor recreation, *see* Doc. 1 at 7-10 (claiming complete denial of yard access ended in June 2016). Thus, as soon as one of Johnson's medical providers identified a risk to his health from lack of exercise, he regained access to the yard. And he continued to be allowed to access the yard even after Dr. Tilden subsequently attributed Johnson's muscle spasms to dehydration. *See id.*; Doc. 78-5 at 8; Doc. 93-16 at 63.

Johnson argues that State Defendants were aware of and disregarded the risks associated with lack of exercise because he told them about his alleged health issues, the Department's policies require outdoor exercise, and, in his view, the risk to his health was obvious. *See* AT Br. at 41-48. To the extent that Johnson relies on documents attached to his rejected amended complaint to show that he informed State Defendants of his health issues, *see* AT Br. at 42 (citing App. 116-42 (Doc. 45-1 at 41 – Doc. 45-2 at 9); App. 136-38 (Doc. 45-2 at 3-5); App. 143-50 (Doc. 45-2 at 10-17)), those documents were not before the district court and so cannot be cited on appeal, *see Agnew*, 683 F.3d at 348 (holding a complaint cannot be amended by

appellate brief) (internal quotations omitted). Regardless, these documents do not undermine State Defendants' reasonable reliance on the judgment of medical professionals that Johnson's physical and psychological issues were not caused or exacerbated by lack of exercise. *See Giles*, 914 F.3d at 1052 (no deliberate indifference where prison officials relied on the professional judgment of medical practitioners).

In further support of his argument that State Defendants' knew of and ignored the risks to Johnson's health, he quotes the Illinois Administrative Code as requiring that "'[o]ffenders in segregation status shall be afforded the opportunity to recreate outside their cells a minimum of eight hours per week.'" AT Br. at 43 (quoting 20 Ill. Admin. Code § 504.670(a) (2017)). The language immediately preceding and following this quote, however, qualifies what he presents as imperative:

> The Chief Administrative Officer shall determine the number of hours per week offenders in segregation status may recreate outside their cells. Offenders in segregation status shall be afforded the opportunity to recreate outside their cells a minimum of eight hours per week distributed in increments over no less than two days per week, unless otherwise specified by the settlement agreement approved in the case of *Rasho et al. v. Baldwin, et al*., Case No. 07-1298 in USDC CDIL, or unless otherwise restricted by the Chief Administrative Officer in accordance with this Section.

20 Ill. Admin. Code § 504.670(a) (2017). The following subsection provides that an inmate's "out of cell recreation may be temporarily restricted or suspended if the Chief Administrative Officer determines the activity to be a threat to the safety and security of the facility or any person[,]" so long as the restriction is not "medically

contraindicated[.]" *Id.* § 504.670(b) (2017). And subsection (c) further allows the restriction of "recreational opportunities" for inmates "who are found guilty" of "[c]omitting assault" "while in segregation[.]" *Id.* § 504.670(c) (2017). Consistent with these provisions, Johnson's recreation opportunities were restricted due to his repeated assaults on correctional officers and other inmates, other violent misconduct, and the security threat he posed. *See supra* § III.B.i.

Finally, Johnson argues that he provided the alternative option of placing him in the Mental Health Unit. AT Br. at 38-39. But the undisputed facts, proposed by State and Wexford Defendants and unopposed by Johnson, established that none of State Defendants had the authority to order such a move—only the mental health staff had the authority to do so. *See* Doc. 76 at 29; Doc. 76-3 at 7-8; Doc. 76-4 at 7; Doc. 92 at 3-10. Since they lacked authority to move him to the Mental Health Unit, State Defendants could not have been deliberately indifferent. *Walker*, 940 F.3d at 966. In fact, even if he had been transferred to the Mental Health Unit, he would have remained on yard restriction status. *See* Doc. 76-9 at 27-28; *see also* Doc. 76-3 at 8. And, in any event, State Defendants appropriately deferred to the mental health professionals' expertise that the move was not necessary. *See Giles*, 914 F.3d at 1052 (no deliberate indifference where prison officials relied on the professional judgment of medical practitioners).

Because State Defendants lacked authority to change his yard restriction status and relied on professional medical judgments that Johnson's physical and

psychological issues were unrelated to a lack of exercise, they were not deliberately indifferent to his need for exercise.

**C.    If not forfeited, the alleged heat, unsanitary conditions, and excessive noise levels in Johnson's cells did not constitute cruel and unusual punishment.**

On appeal, Johnson does not cite to the record in support of or develop an argument explaining how the summertime temperatures, alleged lack of sanitation, or noise caused by other inmates satisfied the objective prong of the deliberate indifference standard.  *See* AT Br. at 39-41.  He also does not address whether State Defendants were even aware of, or disregarded, these particular conditions, as would be required to establish the subjective intent requirement.  *See* AT Br. at 41-48. Rather, Johnson argues that he informed State Defendants of unspecified "hazardous conditions" in his cell, *see* AT Br. at 42, while focusing the substance of his arguments on yard restrictions and placement in segregation generally, *see* AT Br. at 43-48.  Arguments left out of an opening brief, lacking citation to the record, or made in a vague or perfunctory fashion are forfeited.  *See Scheidler*, 914 F.3d at 540 (arguments not made in opening brief are forfeited); *Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 538 (7th Cir. 2017) (failure to cite to record in support of argument results in forfeiture); *Hall v. Flannery*, 840 F.3d 922, 927 (7th Cir. 2016) (undeveloped arguments are forfeited).

Forfeiture aside, State Defendants did not act with deliberate indifference to the temperature, sanitation, or noise levels in Johnson's cells.  Although high temperatures may violate the Constitution when no steps are taken to cool the cells,

*see Haywood v. Hathaway*, 842 F.3d 1026, 1030 (7th Cir. 2016); *Henderson v. DeRobertis*, 940 F.2d 1055, 1059-60 (7th Cir. 1991), there is no deliberate disregard for the inmate's health when the defendants acted to alleviate the heat, *see Rogers v. Scott*, 695 Fed. Appx. 155, 160-61 (7th Cir. 2017); *see also Rosario*, 670 F.3d at 821-22 (no deliberate indifference where officers responded reasonably to risk, even if harm not averted).  Here, State Defendants attempted to reduce the heat by providing ice and placing industrial fans on the galleries.  Doc. 1 at 17-19; Doc. 76-8 at 23, 90-91; Doc. 76-9 at 3.

In addition, Johnson's doctors and other medical staff did not connect his alleged heath issues to his cell conditions.  Johnson alleged that he suffered fatigue, heart palpitations, inability to focus, depression, and worsening mental health from the high temperatures in his cells.  *Id.*; Doc. 76-8 at 24-25.  Johnson also alleged that he suffered skin rashes, respiratory issues, headaches, and itchy eyes from the unsanitary conditions in his cells.  Doc. 1 at 11-13, 19-20; Doc. 76-8 at 24-25, 40; Doc. 76-9 at 74-77.  During his time at Pontiac, Johnson saw doctors for all of these issues.  *See*, *e.g.*, Doc. 78 at 3; Doc. 78-2 at 10; Doc. 93-16 at 1, 6.  However, the doctors did not diagnose his physical maladies as arising out of or being exacerbated by his cell conditions.  *See*, *e.g.*, Doc. 78 at 9 – Doc. 78-1 at 3; Doc. 78-2 at 1 – 78-3 at 2; Doc. 78-5 at 1-9.

All times but one, Johnson's rashes were diagnosed as acne.  Doc. 78 at 3; Doc. 78-1 at 9; 78-2 at 8; Doc. 78-4 at 10; Doc. 93-15 at 24, 60, 66; 93-16 at 10, 52.  That other time, the doctor did not associate the rash with Johnson's cell conditions.  *See*

Doc. 93-15 at 55-56; *see also* Doc. 78-3 at 6 (noting no lesions). Moreover, at least one of Johnson's psychotropic medications, Lamictal, was noted to have the potential side effect of rashes, *see* Doc. 78-2 at 3, and his taking it coincided with the majority of his complaints about rashes, *see id.*; 78-2 at 8; Doc. 93-15 at 55-56, 60-61, 64, 66; Doc. 93-16 at 3, 10, 25-26, 34. And when doctors asked Johnson about the potential source of his rashes, he did not identify his cell conditions. *See* Doc. 93-15 at 55, 59.

Similarly, doctors never attributed Johnson's respiratory issues, Doc. 78-2 at 10; 78-3 at 1; Doc. 93-15 at 57-58, 62; Doc. 93-16 at 1, 4, 14, 23, 28-29, his itchy eyes, Doc. 93-16 at 1, 4, 14, 23, or his headaches, *id.* at 6, 9, to the conditions in his cells. In fact, Johnson's medical notes indicate he has seasonal allergies, and only identify complaints about itchy eyes during the spring and summer. *See id.* at 1, 4, 14, 23.

Finally, although Johnson testified that he notified his mental health providers that the excessive noise was exacerbating his mental health issues, *see*, *e.g.*, Doc. 76-8 at 15-18, 25-28, 42-44, at no point did these providers determine that keeping him in segregation was harmful to his mental state. *See* Doc. 76 at 9, 14, 19, 25, 27, 29; Doc. 73-6 at 5, 7-8; Doc. 76-4 at 3, 7; Doc. 76-5 at 5; Doc. 76-6 at 4.

In short, although Johnson may have associated his ailments with the conditions of his cell, the medical professionals treating him did not. State Defendants' reliance on these professional medical opinions absolves them of liability under the subjective element of the deliberate indifference inquiry. *See Giles*, 914 F.3d at 1052 (no deliberate indifference where prison officials relied on the

professional judgment of medical practitioners).   Thus, this Court should affirm

summary judgment on Johnson's heat, sanitary conditions, and excessive noise

claims because he could not establish State Defendants' culpable mental state.

## IV.   In the alternative, State Defendants were entitled to qualified immunity.

State Defendants raised the affirmative defense of qualified immunity in their

answer to Johnson's complaint, Doc. 35 at 2, but did not raise it in their motion for

summary judgment, *see generally* Doc. 92.  State Defendants concede that this

oversight results in forfeiture of the issue.  *Cloe v. City of Indianapolis*, 712 F.3d

1171, 1182 (7th Cir. 2013), *overruled on other grounds by Ortiz v. Werner Enters.,

Inc.*, 834 F.3d 760, 764-65 (7th Cir. 2016).  However, this Court has discretion to

overlook forfeiture and reach the merits of an issue in the interests of justice or

judicial economy.  *See Sebesta v. Davis*, 878 F.3d 226, 233 (7th Cir. 2017); *Russ.

Media Grp., LLC v. Cable America, Inc.*, 598 F.3d 302, 308 (7th Cir. 2010).  The Court

should do so here because the undisputed facts support affirming the district court's

judgment based on qualified immunity, and addressing the merits would avoid the

costs of a remand that would produce the same result.  *See Sebesta*, 878 F.3d at 233

(addressing forfeited qualified immunity claim because there were no disputed facts

and merits supported grant of immunity); *McCann v. Mangialardi*, 337 F.3d 782, 791

(7th Cir. 2003) (explaining "that interests of judicial economy weigh against sending

a case back to the district court when there is nothing to be gained from a remand")

(internal quotations omitted); *see also Schultze v. White*, 127 Fed. Appx. 212, 216 (7th

Cir. 2005) (addressing forfeited affirmative defense because "the record clearly supports affirmance of the district court's judgment").

Qualified immunity protects state officials from liability for damages "under § 1983 unless [their conduct] (1) . . . violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotations omitted). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotations omitted). This is a "demanding standard" that is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 138 S. Ct. at 589 (internal quotations omitted).

State Defendants were entitled to qualified immunity because Johnson did not satisfy either element of this test. As discussed, Johnson did not present evidence sufficient to establish a violation of his Eighth Amendment rights. He failed to identify evidence from which a reasonable jury could conclude that the restrictions on his access to the yard denied him the basic human need for exercise. *See supra* § III.B.i. Johnson forfeited arguments on whether the temperature, sanitation, and noise levels in his cell were sufficiently serious to violate the Constitution. *See supra* § III.C. In addition, he failed to identify evidence from which a reasonable jury could find that State Defendants were deliberately indifferent to risks from lack of exercise, unsanitary conditions, or high noise levels, because they relied on professional medical assessments otherwise. *See supra* §§ III.B.ii, C. And he failed to

42

identify evidence from which a reasonable jury could find that State Defendants were deliberately indifferent to the risk from high temperatures because they attempted to alleviate those conditions.  *See supra* § III.C.  Thus, State Defendants did not violate Johnson's constitutional rights.

But even if this Court were to hold that the evidence was sufficient to show a genuine issue of material fact as to a constitutional violation, Johnson cannot identify any authority clearly establishing that similar conduct violated the Eighth Amendment.  Given *Pearson*, it was not "beyond debate," *Kisella*, 138 S. Ct. at 1152, that the series of restrictions on Johnson's access to outdoor exercise violated the Constitution when they were imposed in response to his acts of misconduct, *see Pearson*, 237 F.3d at 884-86; *supra* § III.B.i.  And this Court has held that prison officials are not deliberately indifferent when they defer to the judgment of medical professionals or attempt to alleviate the challenged condition—because these are reasonable responses and reasonable conduct is not criminally reckless.  *See supra* §§ III.B.ii, C.  Thus, State Defendants are entitled to qualified immunity.

## CONCLUSION

For these reasons, State Defendants-Appellees request that this Court affirm

the district court's judgment in their favor.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

/s/ Benjamin F. Jacobson
**BENJAMIN F. JACOBSON**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2546
bjacobson@atg.state.il.us

Attorneys for State Defendants-
Appellees

December 23, 2019

**CERTIFICATE OF COMPLICANCE WITH FED. R. APP. P. 32**

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Cir. R. 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2013, in 12-point Century Schoolbook BT font, and complies with the page limitations set forth in Fed. R. App. P. 32(a)(7)(B) in that the brief is 11,201 words.

/s/ Benjamin F. Jacobson
**BENJAMIN F. JACOBSON**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2546
bjacobson@atg.state.il.us

## CERTIFICATE OF FILING AND SERVICE

I certify that on December 23, 2019, I electronically filed the foregoing Brief of State Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participants are CM/ECF users and will be served by the CM/ECF system:

Daniel M. Greenfield (attorney for M. Johnson)
Daniel-greenfield@law.northwestern.edu

Julie A. Teuscher (attorney for A. Moss, K. Haag, L. Duckworth, S. McCormick, R. Ojelade, S. Lanternan, A. Tilden, and Wexford Health Sources, Inc.)
jteuscher@cassiday.com

Lynsey Anne Stewart (attorney for A. Moss, K. Haag, L. Duckworth, S. McCormick, R. Ojelade, S. Lanternan, A. Tilden, and Wexford Health Sources, Inc.)
lstewart@cassiday.com

/s/ Benjamin F. Jacobson
**BENJAMIN F. JACOBSON**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2546
bjacobson@atg.state.il.us